IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JULIE A. SU, ) | |
| Acting Secretary of Labor, ) | |
| United States Department of Labor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 3:22-cv-588-ECM |
| ) | [WO] |
| GLOBAL K9 PROTECTION ) | |
| GROUP, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the parties' joint motion for entry of a consent decree. (Doc. 40). Because the Court concludes the proposed consent decree is fair, reasonable, lawful, and in accord with public policy, the motion for entry of the consent decree (doc. 40) is GRANTED.

**I. BACKGROUND**

Plaintiff Secretary of Labor, United States Department of Labor, ("the Secretary")[1] brought this action against Defendants Global K9 Protection Group, LLC ("Global K9") and Eric Hare ("Hare") (collectively "Defendants") on October 3, 2022. (Doc. 1). The Secretary alleges that the Defendants failed to properly compensate employees for hours worked in excess of forty hours per week in violation of 29 U.S.C.

---

[1] Former named Plaintiff Martin Walsh, who was Secretary of Labor when the suit commenced, is no longer the Secretary. Acting Secretary of Labor Julie Su was automatically substituted as a party upon her assumption of the role. *See* FED. R. CIV. P. 25(d).

§§ 207 and 215(a)(2) and failed to "make, keep[,] and preserve adequate and accurate records . . . of the wages, hours[,] and other conditions and practices of employment maintained by the enterprise" in violation of 29 U.S.C. §§ 211(c) and 215(a)(5). *Id.* at 3. Exhibit A, attached to the complaint, lists eighty-three undercompensated employees. (Doc. 1-1). The Secretary brought this action pursuant to the authority granted in 29 U.S.C. § 211(a) and § 216(c).

Since the filing of the suit in 2022, both parties have litigated the case with vigor. Throughout the litigation, the Office of the Solicitor has represented the Secretary, and the Defendants have retained private counsel. After almost two years of litigation, the parties jointly filed the pending motion for entry of a consent decree (doc. 40) to resolve the matter. In relevant part, the consent decree dismisses all claims against Hare and requires Global K9 to pay $82,500.00 in back wages and $82,500.00 in liquidated damages ($165,000.00 total), refrain from retaliating against employees, and take action to comply with the Fair Labor Standards Act ("FLSA"). (*See* doc. 40-1).

## II.  APPLICABLE LAW

To approve a consent decree, district courts should "carefully" examine the decree to ensure it is fair, lawful, reasonable, and aligns with public policy. *Stovall v. City of Coca*, 117 F.3d 1238, 1242 (11th Cir. 1997) (quoting *United States v. City of Miami*, 664 F.2d 435, 440–41 (5th Cir. 1981) (en banc) (Rubin, J. concurring)). Because the consent decree is "a judicial act," this Court retains the independent responsibility of ensuring the agreement reached between the parties is fair, lawful, reasonable, and aligns with public policy. *Id.* (quoting *League of United Am. Citizens Council No. 4434 v. Clements*, 999

F.2d 831, 845 (5th Cir. 1993)). If the Court finds the decree unfair, unlawful, unreasonable, or contrary to public policy, the Court must reject the consent decree notwithstanding the parties' agreement. *See id.* But there is "a strong public policy against judicial rewriting of consent decrees," and "a district court may not impose obligations on a party that are not unambiguously mandated by the decree itself." *Reynolds v. Roberts*, 202 F.3d 1303, 1312 (11th Cir. 2000) (internal citations omitted). Essentially, "[a] district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted." *United States v. DeKalb Cnty.*, 2011 WL 6402203, at *9 (N.D. Ga. Dec. 20, 2011) (internal citations omitted).[2]

### III. DISCUSSION

Because the Court finds that the consent decree is fair, lawful, reasonable, and aligns with public policy, the Court approves the parties' proposal.

**A.     Fair**

"Fairness incorporates both procedural and substantive components." *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994). Normally, a fair agreement "is the product of good-faith negotiations, reflects the opinions of experienced counsel, and takes into account the possible risks involved in litigation if the settlement is not approved." *United States v. Georgia-Pacific Corp.*, 960 F. Supp. 298, 299 (N.D. Ga. 1996). Here, the parties negotiated the terms of the agreement through experienced counsel with no indications of bad faith by either party. (*See* doc. 40 at 2). The

---

[2] Here and throughout this opinion, the Court cites nonbinding authority. While the Court acknowledges that these cases are not binding, the Court finds them persuasive.

agreement came after both parties diligently litigated the case for almost two years, so both parties knew the risks associated with continued litigation and the likelihood of their respective success. Similarly, the substantive terms of the agreement appear fair. Global K9 will pay $165,000.00 in back wages and liquidated damages to be disbursed to eighty-three named persons by the Department of Labor, and each party bears their own litigation costs. (Doc. 40-1 at 2). Additionally, the decree requires Global K9 to implement procedures to ensure its compliance with the FLSA. (*Id.* at 2, 4). The agreement's procedural and substantive components appear fair.

**B.     Lawful**

Even when the parties agree, the Court cannot approve of an agreement "that violates [the] Constitution, statute, or jurisprudence." *Stovall*, 117 F.3d at 1242 (quoting *City of Miami*, 664 F.2d at 440–41 (en banc) (Rubin, J. concurring)). Here, the parties agree that the Secretary possessed the statutory authority to bring the case pursuant to 29 U.S.C. § 211(a) and § 216(c). (Doc. 40 at 1). The FLSA authorizes the Secretary to seek "the amount of unpaid . . . overtime compensation and an equal amount as liquidated damages" as penalties against a defendant. 29 U.S.C. § 216(c). The Secretary, therefore, lawfully brought the action and seeks appropriate damages ($82,500.00 in back wages and an equal amount in liquidated damages). But the consent decree also includes provisions which the parties describe as "a permanent injunction requiring further compliance with the overtime and recordkeeping provisions in the [FLSA]." (Doc. 40 at 1–2). Such a term is a "follow-the-law" injunction. *See Davis v. Mar-Jac Poultry, LLC*, 2024 WL 218510, at *12 (N.D. Ala. Jan. 19, 2024) ("A follow-the-law

injunction is one demanding that a party do nothing more than 'obey the law.'" (quoting *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006)).

Generally, the Eleventh Circuit disfavors "follow-the-law" injunctions and has held these injunctions are unenforceable. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1200–01 (11th Cir. 1999). Although generally disfavored, district courts may approve a follow-the-law injunction as part of a consent decree that seeks to remedy FLSA violations. *Cf. Dunlop v. Davis*, 524 F.2d 1278, 1279–81 (5th Cir. 1975) (reversing a district court's decision not to issue a follow-the-law injunction).[3]

The parties rely on *Dunlop* for the proposition that this Court can approve a consent decree including an injunction requiring Global K9 to comply with the FLSA. (Doc. 40 at 2). In relevant part, the Fifth Circuit stated:

> The effect of permanently enjoining from future violations . . . an employer found to have violated [the FLSA] in the past is to shift the responsibility for compliance onto the employer's shoulders and to lessen the responsibility of the Wage and Hour Division of investigating past violators to ascertain if they are in compliance with the provisions of the Act. The issuance of a permanent injunction in FLSA cases does not subject an employer against whom it runs to a penalty or a hardship since it requires him to do what the Act requires anyway to comply with the law. Because an injunction has an administratively beneficial effect in enforcing the FLSA, this court has not hesitated to reverse district courts for refusing to enjoin future violations.

*Dunlop*, 524 F.2d at 1280–81 (internal citations and quotations omitted). Considering the parties' agreement on the injunction (especially the absence of protest by Global K9), the

---

[3] Decisions of the Fifth Circuit issued before October 1, 1981, are binding precedent in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Court finds the injunction lawful as part of the decree. *See generally Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 502, 522 (1986) ("Indeed, it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all. . . . More importantly, it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree." (citation omitted)). Thus, the Court finds the terms of the consent decree lawful.

**C.     Reasonable**

While some courts analyze fairness and reasonableness together, *see, e.g., S.E.C. v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 294–95 (2d Cir. 2014), the Eleventh Circuit distinguishes the two, *see Stovall*, 117 F.3d at 1242 (citation omitted). Of the considerations listed by the Second Circuit to evaluate reasonableness, the Court finds two relevant: (1) "whether the terms of the proposed consent judgment, including its enforcement mechanism, are clear," and (2) "whether the proposed consent judgment reflects a resolution of the actual claims in the complaint." *Citigroup*, 752 F.3d at 295 (citations omitted). The agreement reached by the parties meets both criteria.

The terms of the proposed consent order and its method of enforcement are clear. First, the consent decree outlines the injunction preventing Global K9 employees from working more than forty hours in a workweek without receiving overtime pay and requiring Global K9 to make and maintain the records required by statute and regulation. (Doc. 40-1 at 2). Second, the consent decree provides a fixed amount of damages owed by the Defendant ($165,000.00) and the method by which the Defendant can pay the

assigned damages. (*Id.* at 2–3).  Third, the consent decree prohibits Global K9 from retaliating against any employee who receives payment for earned overtime wages. (*Id.* at 3).  Finally, the consent decree outlines specific actions Global K9 must take to inform its employees of their rights under the FLSA. (*Id.* at 4).

Furthermore, the consent decree resolves the claims in the complaint.  The Secretary brought this action against Hare and Global K9 to remediate Global K9's failure to compensate its employees in accordance with the FLSA. (*See* doc. 1 at 2–3). By its terms, the consent decree dismisses all claims against Hare and requires Global K9 to take remedial actions (back wages and liquidated damages) and future action to prevent any violations in the future. (Doc. 40-1).  These terms, taken together, resolve the claims in the complaint.  Therefore, the Court finds the consent decree is reasonable because its proposed terms are clear, and the proposed order resolves the complaint's claims.

**D.     Aligns with Public Policy**

Finally, the consent decree aligns with public policy.  Congress enacted the FLSA to prevent "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a).  This consent decree promotes Congress's purpose by requiring Global K9 to properly compensate its employees for their work and prevents such adverse actions in the future.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for entry of a consent decree (doc. 40) and adopts the terms of the proposed consent order (doc. 40-1) and Schedule A referenced therein (doc. 42-1).

A separate final judgment will enter.

Done this 16th day of October, 2024.

                                            /s/ Emily C. Marks
                                  EMILY C. MARKS
                                  CHIEF UNITED STATES DISTRICT JUDGE